Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone:    602.328.0262
Facsimile:    602.926.1479
Email:        srandall@randallslaw.com

Michael A. Josephson (*pro hac vice forthcoming*)
Andrew W. Dunlap (*pro hac vice forthcoming*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:    713.352.1100
Facsimile:    713.352.3300
Emails:       mjosephson@mybackwages.com
              adunlap@mybackwages.com

Richard J. (Rex) Burch (*pro hac vice forthcoming*)
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone:    713.877.8788
Email:        rburch@brucknerburch.com

**ATTORNEYS FOR VALTIERRA AND
THE HOURLY EMPLOYEES**

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| Alfred Valtierra III, Individually and for Others Similarly Situated, | Case No. _____ |
| Plaintiff, | **ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES** |
| v. | |
| Pinto Valley Mining Corp., a Delaware corporation, | **(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);** |
| Defendant. | |

- 1 -

**(2) Failure to Timely Pay Earned Wages (Arizona Wage Act, A.R.S. § 23-350, *et seq.*).**

**(Jury Trial Demanded)**

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Alfred Valtierra III (Valtierra) brings this class and collective action to recover unpaid wages and other damages from Pinto Valley Mining Corp. (Pinto Valley).

2.      Pinto Valley employed Valtierra as one of its Hourly Employees (defined below) in Arizona.

3.      Valtierra and the other Hourly Employees regularly work more than 40 hours a workweek.

4.      However, Pinto Valley does not pay Valtierra and the other Hourly Employees for all their hours worked, including overtime hours.

5.      Rather, Pinto Valley requires Valtierra and the other Hourly Employees to gather tools and equipment necessary to perform their job duties, suit out in protective clothing and safety gear necessary to safely perform their job duties, while on Pinto Valley's premises, all prior to being "on the clock."

6.      Likewise, Pinto Valley requires Valtierra and the other Hourly Employees to change out of their safety gear and protective clothing and store their tools and equipment, while on Pinto Valley's premises, "off the clock." (¶¶ 5-6 together, Pinto Valley's "pre/post shift off the clock policy").

7.      But Pinto Valley does not pay Valtierra and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing and gathering and storing their tools and equipment, "off the clock," before and after their shifts.

8.      Pinto Valley's pre/post shift off the clock policy violates the Fair Labor Standards Act (FLSA) by depriving Valtierra and the other Hourly Employees of overtime wages when they work in excess of 40 hours in a workweek.

9.      Additionally, Pinto Valley does not pay Valtierra and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they work in excess of 40 a workweek.

10.     Instead, Pinto Valley pays Valtierra and the other Hourly Employees non-discretionary production and sign on bonuses that Pinto Valley fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay (Pinto Valley's "bonus pay scheme").

11.     Pinto Valley's bonus pay scheme violates the FLSA by failing to compensate Valtierra and the other Hourly Employees at 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

12.     And Pinto Valley thus fails to timely pay all earned wages due on designated paydays and upon termination of employment, in violation of Arizona Wage Act (AWA).

### JURISDICTION & VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     This Court also has supplemental jurisdiction over the state-law subclass claims

because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over Pinto Valley because it is registered to do business in Arizona and its substantial contacts with and conduct directed toward Arizona, including employing Valtierra in Arizona subject to its pre/post shift off the clock policy and bonus pay scheme.

16. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

17. Specifically, Pinto Valley employed Valtierra subject to its pre/post shift off the clock policy and bonus pay scheme in its Gila County, Arizona mine, which is in this District and Division.

**PARTIES**

18. Pinto Valley employed Valtierra as a crusher maintenance employee from approximately February 2022 through April 2024.

19. Throughout his employment, Pinto Valley subjected Valtierra to its pre/post shift off the clock policy.

20. And throughout his employment, Pinto Valley paid Valtierra under its bonus pay scheme.

21. Valtierra's written consent is attached as **Exhibit 1**.

22. Valtierra brings this class and collective action on behalf of himself and other Pinto Valley employees that Pinto Valley employed subject to its pre/post shift off the clock policy and/or paid under its bonus pay scheme.

23. The FLSA Collective of similarly situated employees is defined as:

**All hourly Pinto Valley employees who worked at an operation owned, operated, or controlled by Pinto Valley during the last three years through final resolution of this action (the "FLSA Collective Members").**

24. Valtierra also seek to represent a class under the AWA pursuant to FED. R. CIV. P. 23.

25. The Arizona Class of similarly situated employees is defined as:

**All hourly Pinto Valley employees who worked at an operation owned, operated, or controlled by Pinto Valley in Arizona during the past 1 year through final resolution of this action ("Arizona Class Members").**

26. The FLSA Collective Members and Arizona Class Members are collectively referred to as the "Hourly Employees."

27. Pinto Valley is a Delaware corporation.

28. Pinto Valley is registered to do business in Arizona.

29. Pinto Valley may be served with process through its registered agent: CT Corporation System, 3800 N. Central Ave., Suite 460, Phoenix, AZ 85012.

## FLSA COVERAGE

30. At all relevant times, Pinto Valley was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

31. At all relevant times, Pinto Valley was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, Pinto Valley was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones,

computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

33.    At all relevant times, Pinto Valley had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

34.    At all relevant times, Valtierra and the other Hourly Employees were Pinto Valley's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35.    At all relevant times, Valtierra and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

FACTS

36.    Pinto Valley "is an open-pit mine located at the west end of the historic Globe-Miami mining district of central Arizona" and "has been in operation since 1972 and has produced more than four billion pounds of copper since then."[1]

37.    To meet its business objectives, Pinto Valley employs workers, including Valtierra and the other Hourly Employees, to extract and process copper.

38.    For example, Pinto Valley employed Valtierra as a crusher maintenance employee from approximately February 2022 through April 2024 in its mine located in Gila County, Arizona.

39.    As a crusher maintenance employee, Valtierra's job duties include performing preventive maintenance on the primary crusher and attached conveyor belt, as well as repairing the crusher when it breaks down.

---

[1] https://capstonecopper.com/operations/pinto-valley/ (last visited January 17, 2025).

40.    Valtierra's job duties likewise include donning and doffing his safety gear and protective clothing, gathering and storing his tools and equipment, on Pinto Valley's premises, before and after his scheduled shifts.

41.    Throughout his employment, Valtierra's "on the clock" hours worked have been recorded.

42.    Thus, Pinto Valley's employment records reflect the number of hours he recorded working "on the clock" each week.

43.    Throughout his employment, Valtierra has regularly worked more than 40 hours a workweek.

44.    Indeed, throughout his employment, Valtierra has typically worked approximately 10-12 hours a day and 4 to 5 days a week (40 to 60 hours a workweek).

45.    For example, during the August 21 to September 3, 2023 pay period, Valtierra worked 85.66 hours "on the clock":

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Overtime | 48.7500 | 2.03 | 98.97 | 3,138.36 |
| Overtime | 49.8980 | 3.63 | 181.13 | |
| Mileagepayment | | | 100.00 | 100.00 |
| Reg | 32.5000 | 80.00 | 2,600.00 | 35,152.01 |
| Bereavement | | | | 975.00 |
| Boot Allowance | | | | 150.00 |
| Holiday | | | | 975.00 |
| Pd Absence | | | | 65.00 |
| Production Bon | | | | 525.75 |
| Sick Leave | | | | 325.00 |
| Sign On Bonus | | | | 5,000.00 |
| Unpd Excused | | | | 602.23 |
| **Gross Pay** | | | **$2,980.10** | 46,406.13 |

46.    But throughout his employment, Pinto Valley has not paid Valtierra for all his hours worked.

47.    Instead, throughout his employment, Pinto Valley has subjected Valtierra to its pre/post shift off the clock policy.

48.    Specifically, Pinto Valley requires Valtierra to dress out in protective clothing and safety gear (including hard hat, reflective coveralls, ear plugs, steel toed boots, safety glasses, gloves, dust mask, respirator), gather tools and equipment (including channel lock pliers, hammers, wrenches, extension cords) fundamentally necessary to performing his job duties as a crusher maintenance employee, and to walk approximately 250 yards from the change house to the crusher facility, all "off the clock," and without compensation.

49.    This took Valtierra approximately 30 to 45 minutes each workday.

50.    Valtierra could not perform his principal job duties in accordance with Pinto Valley's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

51.    Valtierra could not safely perform his job duties in accordance with Pinto Valley's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

52.    Indeed, much of the gear Valtierra utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq.*

53.    The donning of protective clothing and safety gear and gathering of tools and equipment are therefore integral and indispensable work duties for Valtierra.

54.    Likewise, Pinto Valley required Valtierra to walk from the crusher facility to the change house, remove his safety gear and protective clothing and store his tools and equipment each day at the end of his shift, all "off the clock" and without compensation.

55.    This took Valtierra approximately 30 to 45 minutes each workday.

56.    Valtierra could not perform his job duties in accordance with Pinto Valley's policies, procedures, and expectations without removing this safety gear and protective clothing and storing his tools and equipment each workday.

57.    Valtierra could not safely perform his job duties in accordance with Pinto Valley's policies, procedures, and expectations without removing this safety gear and protective clothing and storing his tools and equipment each day.

58.    The removal of safety gear and protective clothing and storing his tools and equipment each day are therefore integral and indispensable work duties for Valtierra.

59.    But under its pre/post shift off the clock policy, Pinto Valley does not compensate him for the same.

60.    Thus, because of its pre/post shift off the clock policy, Pinto Valley failed to pay Valtierra overtime wages for all his overtime hours worked during workweeks Valtierra works in excess of 40 hours.

61.    Valtierra and the other Hourly Employees perform their jobs under Pinto Valley's supervision and use materials, equipment, and technology Pinto Valley approves and supplies.

62.    Pinto Valley requires Valtierra and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

63.    Valtierra's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Pinto Valley.

64.    At the end of each pay period, Valtierra and the other Hourly Employees receive wages from Pinto Valley that are determined by common systems and methods that Pinto Valley selects and controls.

65.    Likewise, the other Hourly Employees supervisors typically record them working approximately 10 to 12 hours a day and 4 to 5 days a week (40 to 60 hours a workweek).

66.    But, just as with Valtierra, Pinto Valley fails to pay the other Hourly Employees for all their hours worked.

67.    Indeed, Pinto Valley uniformly subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Valtierra.

68.    Specifically, just as with Valtierra, Pinto Valley requires them to dress out in their protective clothing and safety gear (including hard hat, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, dust masks, respirators), gather tools and equipment (including channel lock pliers, extension cords, wrenches, hammers, screw drivers) fundamentally necessary to performing their jobs, and then walk from the change house, "off the clock" and without compensation.

69.    And Pinto Valley requires them to walk to the change house, remove their safety gear and protective clothing and store their tools and equipment after their shifts, "off the clock" and without compensation.

70.    And like Valtierra, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq.*

71.    But, like Valtierra, the other Hourly Employees are regularly forced to perform this integral, indispensable, and compensable work "off the clock" before and after their shifts.

72.    Thus, just as with Valtierra, Pinto Valley does not pay the other Hourly Employees for this work they are required to perform "off the clock" before and after their scheduled shifts.

73.    And, just as with Valtierra, these job duties take the other Hourly Employees approximately an hour to an hour and a half to complete each workday, "off the clock" and without compensation.

74.    Pinto Valley fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock," on its premises that Pinto Valley does not want performed.

75.    And Pinto Valley knows, should know, or recklessly disregards whether Valtierra and the other Hourly Employees routinely perform compensable work "off the clock," and without compensation, before and after their scheduled shifts.

76.    Thus, Pinto Valley requests, suffers, permits, or allows Valtierra and the other Hourly Employees to perform compensable work "off the clock," without compensation, before and after their scheduled shifts for Pinto Valley's primary benefit.

77.    Despite accepting the benefits, Pinto Valley does not pay Valtierra and the other Hourly Employees for the compensable work they perform "off the clock" before and after their shifts.

78.     Thus, under Pinto Valley's uniform pre/post shift off the clock policy, Valtierra and the other Hourly Employees are denied overtime pay for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours.

79.     And throughout their employment, Pinto Valley has not paid Valtierra and the other Hourly Employees at the required premium rate for all hours worked in excess of 40 in a workweek.

80.     Instead, Pinto Valley pays Valtierra and the other Hourly Employees under its bonus pay scheme.

81.     Specifically, Pinto Valley pays Valtierra and the other Hourly Employees non-discretionary production and sign on bonuses that it fails to include in these employees' regular rates of pay for overtime purposes.

82.     Thus, under Pinto Valley's bonus pay scheme, it does not pay Valtierra and the other Hourly Employees overtime wages at the required rate—based on all remuneration—for all hours they work in excess of 40 a workweek.

83.     And Valtierra and the other Hourly Employees repeatedly complained to supervisors, HR, and/or Pinto Valley management about their unpaid and underpaid overtime compensation.

84.     The Hourly Employees are thus uniformly subject to the same or similar unlawful policies—Pinto Valley's pre/post shift off the clock policy and bonus pay scheme—for similar work, in willful violation of the FLSA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

85.    Valtierra brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

86.    Like Valtierra, the other Hourly Employees are victimized by Pinto Valley's pre/post shift off the clock policy and bonus pay scheme.

87.    Other Hourly Employees worked with Valtierra and indicated they were paid in the same manner, performed similar work, and were subject to Pinto Valley's same pre/post shift off the clock policy and bonus pay scheme.

88.    Based on his experience with Pinto Valley, Valtierra is aware Pinto Valley's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

89.    The Hourly Employees are similarly situated in the most relevant respects.

90.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

91.    Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

92.    Rather, Pinto Valley's pre/post shift off the clock policy and bonus pay scheme render Valtierra and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

93.    Pinto Valley's records reflect the number of "on the clock" hours the Hourly Employees were recorded as working each week.

94.     Pinto Valley's records also show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay.

95.     The back wages owed to Valtierra and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

96.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Pinto Valley's records, and there is no detraction from the common nucleus of liability facts.

97.     Therefore, the issue of damages does not preclude class or collective treatment.

98.     Valtierra's experiences are therefore typical of the experiences of the other Hourly Employees.

99.     Valtierra has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

100.     Like each Hourly Employee, Valtierra has an interest in obtaining the unpaid wages owed under federal and Arizona law.

101.     Valtierra and his counsel will fairly and adequately protect the interests of the Hourly Employees.

102.     Valtierra retained counsel with significant experience in handling complex class and collective action litigation.

103.     Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Pinto Valley will reap the unjust benefits of violating the FLSA.

104.     Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

105. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Pinto Valley.

106. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

107. The questions of law and fact that are common to each Hourly predominate over any questions affecting solely the individual members.

108. Among the common questions of law and fact are:

    a.    Whether Pinto Valley imposed its pre/post shift off the clock policy on the Hourly Employees;

    b.    Whether Pinto Valley's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for all overtime hours worked;

    c.    Whether Pinto Valley paid the Hourly Employees non-discretionary bonuses;

    d.    Whether Pinto Valley engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for the purpose of calculating overtime;

    e.    Whether Pinto Valley failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

f.    Whether Pinto Valley's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

g.    Whether Pinto Valley's violations were willful?

109.    Valtierra knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

110.    As part of its regular business practices, Pinto Valley intentionally, willfully, and repeatedly violated the FLSA with respect to Valtierra and the other Hourly Employees.

111.    Pinto Valley's pre/post shift off the clock policy and bonus pay scheme deprived Valtierra and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked.

112.    There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

113.    The Hourly Employees are known to Pinto Valley, are readily identifiable, and can be located through Pinto Valley's business and personnel records.

### PINTO VALLEY'S VIOLATIONS WERE WILLFUL

114.    Pinto Valley knew it employed the Hourly Employees.

115.    Pinto Valley knew it was subject to the FLSA's overtime provisions.

116.    Pinto Valley knew Valtierra and the other Hourly Employees were its non-exempt employees entitled to overtime wages.

117.    Pinto Valley knew the FLSA required it to pay non-exempt employees, including Valtierra and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

118.    Pinto Valley knew Valtierra and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because Pinto Valley recorded their "on the clock" hours via its timekeeping system.

119.    Pinto Valley knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

120.    Pinto Valley knew it had a duty to ensure the Hourly Employees were not performing compensable work "off the clock" (without pay).

121.    Pinto Valley knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather and store tools and equipment "off the clock."

122.    Pinto Valley controlled the Hourly Employees' work procedures.

123.    Pinto Valley knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Pinto Valley.

124.    Pinto Valley knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs with Pinto Valley.

125.    Pinto Valley knew the Hourly Employees routinely performed this daily, required "off the clock" work for Pinto Valley's predominant benefit.

126.    In other words, Pinto Valley knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing and gathering and storing tools and equipment) "off the clock" and without compensation.

127.    Pinto Valley knew it paid Valtierra and the other Hourly Employees non-discretionary production and sign on bonuses.

128.    Pinto Valley knew these non-discretionary bonuses were not included in Valtierra's and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

129.    And Pinto Valley knew the FLSA required it to pay Valtierra and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

130.    Pinto Valley knew Valtierra and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

131.    Thus, Pinto Valley knew, should have known, or recklessly disregarded whether it failed to pay Valtierra and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

132.    Pinto Valley's failure to pay Valtierra and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this shared decision made in good faith.

133.    Pinto Valley knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and pre/post shift off the clock policy that

deprived Valtierra and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## COUNT I

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

134.    Valtierra brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

135.    Pinto Valley violated, and is violating, the FLSA by employing non-exempt employees, such as Valtierra and the other FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

136.    Pinto Valley's unlawful conduct harmed Valtierra and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

137.    Accordingly, Pinto Valley owes Valtierra and the other FLSA Collective Members the difference between the wages actually paid and the overtime wages actually earned.

138.    Because Pinto Valley knew, or showed reckless disregard for whether its bonus pay scheme and pre/post shift off the clock policy violated the FLSA, Pinto Valley owes Valtierra and the other FLSA Collective Members these wages for at least the past 3 years.

139.    Pinto Valley is also liable to Valtierra and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

140.    Finally, Valtierra and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COUNT II**

**FAILURE TO PAY EARNED WAGES UNDER THE AWA
(ARIZONA CLASS)**

141.    Valtierra brings his AWA claim on behalf of himself and the other Arizona Class Members pursuant to FED. R. CIV. P. 23.

142.    The conduct alleged violates the AWA. A.R.S. §§ 23-350, *et seq.*

143.    At all relevant times, Pinto Valley was Valtierra's and the other Arizona Class Members' "employer" within the meaning of the AWA. *See* A.R.S. § 23-350(3).

144.    At all relevant times, Pinto Valley employed Valtierra and the other Arizona Class Members as its covered "employees" within the meaning of the AWA. *See* § 23-350(2).

145.    Valtierra's and the other Arizona Class Members' outstanding earned overtime wages are "wages" within the meaning of the AWA. *See* § 23-350(7).

146.    The AWA requires employers, like Pinto Valley, to timely pay employees, including Valtierra and the other Arizona Class Members, "all wages due … up to that date" on their regular established paydays. A.R.S. § 23-351(C).

147.    The AWA further requires employers, like Pinto Valley, to timely pay employees, including Valtierra and the other Arizona Class Members, all earned overtime wages no later than sixteen days after the end of the most recent pay period. A.R.S. § 23-351(C)(3).

148.    The AWA prohibits employers, like Pinto Valley, from withholding or diverting any portion of an employee's earned wages. A.R.S. § 23-352.

149.    Pinto Valley violated, and is violating, the AWA by failing to timely pay, and instead willfully withholding earned overtime wages from Valtierra and the other Arizona Class Members. *See* A.R.S. §§ 23-351(C)(3) and 23-352.

150.    Pinto Valley's unlawful conduct harmed Valtierra and the other Arizona Class Members by depriving them of timely payment of the full overtime wages they are owed.

151.    Accordingly, Pinto Valley owes Valtierra and the other Arizona Class Members the difference between the rate actually paid and the proper overtime rate, which to-date, remains outstanding.

152.    Pinto Valley is liable to Valtierra and the other Arizona Class Members for treble damages. *See* A.R.S. § 23-355.

153.    Finally, Valtierra and the other Arizona Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## JURY DEMAND

154.    Valtierra demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Valtierra, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order designating the Arizona Class as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Valtierra and his counsel to represent the interests of the Arizona Class;

d.    An Order finding Pinto Valley liable to Valtierra and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding Pinto Valley liable to Valtierra and the Arizona Class Members for unpaid earned wages owed under the AWA, plus treble damages;

f.    A Judgment against Pinto Valley awarding the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA and/or AWA;

g.    An Order awarding attorney's fees, costs, and expenses;

h.    Pre- and post-judgment interest at the highest applicable rates; and

i.    Such other and further relief as may be necessary and appropriate.

Dated: January 18, 2025.

Respectfully submitted,

**RANDALL LAW PLLC**

By: */s/ Samuel R. Randall*
Samuel R. Randall (No. 024517)
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
602-328-0262 – Telephone
602-926-1479 – Facsimile
srandall@randallslaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR VALTIERRA &
THE HOURLY EMPLOYEES**