Paul A. Wilhelm (*pro hac vice*; MI: P69163)
Andrew J. Ruxton (*pro hac vice*; PA: 322818)
**CLARK HILL PLC**
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
Office: 313.309.4269
Fax: 313.309.6847
Email: pwilhelm@clarkhill.com
　　　aruxton@clarkhill.com

*Attorneys for Defendant, Pinto Valley Mining Corp.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA (PHOENIX DIVISION)

| | |
|---|---|
| Alfred Valtierra III, Individually and for Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>Pinto Valley Mining Corp., a Delaware Corporation,<br><br>　　　　　Defendants. | Case No. 2:25-cv-00184-JJT<br><br>**DEFENDANT'S MOTION TO DISMISS DUE TO ARBITRATION AGREEMENT**<br><br>**(ASSIGNED TO THE HONORABLE JOHN J. TUCHI)** |

Defendant Pinto Valley Mining Corp. ("Defendant" or "Pinto Valley") hereby moves pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), the Federal Arbitration Act (9 U.S.C. §§ 1, *et seq*.) the National Labor Relations Act and applicable law to dismiss the Complaint with prejudice. In support of this motion, Defendant submits its Memorandum of Law in Support, which is incorporated herein by reference.

The claims asserted by Plaintiff Alfred Valtierra, III ("Plaintiff") in the Complaint, individually and on behalf of a purported collective or class, are precluded by arbitration procedures in applicable collective bargaining agreements with Pinto Valley that

governed Plaintiff's employment, and the employment of present or former employees he claims are similarly situated or seeks to represent. The applicable arbitration procedures require the parties to arbitrate, rather than litigate, claims related to employment with Pinto Valley, including claims under the Fair Labor Standards Act and Arizona Wage Payment Act (which are the sole claims in the Complaint).

As a result, this Court does not have subject matter jurisdiction over the Complaint and/or the Complaint fails to state a claim on which relief can be granted in this forum, and the Court should dismiss the Complaint with prejudice.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS DUE TO ARBITRATION AGREEMENT

Defendant moves to dismiss Plaintiff's claims, which he makes on his own behalf, and purportedly on behalf of those he claims are similarly situated or seeks to represent, for unpaid overtime and earned wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and the Arizona Wage Payment Act, A.R.S. §§ 23–350, *et seq* ("AWPA"). Defendant seeks dismissal because Plaintiff, as well as any purported collective and class members, have waived their right to file a lawsuit in court via collective bargaining agreements with valid, enforceable and mandatory arbitration procedures.

These agreements require Plaintiff to resolve through arbitration, "[c]laims for alleged violations of employment related statutes, regulations, or other state or federal laws, other than claims arising under the Employer Retirement Income Security Act," including specifically claims under the FLSA and the AWPA.

- 2 -

For these reasons, Defendant asks the Court for an order dismissing the Complaint with prejudice, recognizing the binding terms of the applicable arbitration procedures.

## BACKGROUND

Pinto Valley employed Plaintiff as a Processing Maintenance Technician 4 from February 14, 2023 to March 7, 2024. *See* Exhibit A (Declaration of Scott Harrell), at ¶ 7. Pinto Valley, on the one hand, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 104, International Union of Operating Engineers, Local No. 428, International Brotherhood of Electrical Workers, Local No. 518, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local No. 627, and United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local No. 469, jointly (the "Union"), on the other hand, entered into collective bargaining agreements effective August 27, 2022 through August 31, 2026 (the "Current CBA"; Exhibit A–1) and effective May 30, 2018 through May 29, 2022 ("Prior CBA"; Exhibit A–2)[1]. At all times during Plaintiff's employment with Pinto Valley, he was represented by the Union, and his employment was governed by collective bargaining agreements entered into between Pinto Valley and

---

[1] The parties to the Prior CBA (2018) entered into a Contract Extension Agreement (Exhibit A–3) to bridge the gap between the effective dates of the Prior CBA and the Current CBA (2022), which indefinitely extended the Prior CBA while the parties negotiated the Current CBA.

the Union. *See* Exhibit A, at ¶¶ 7, 8; Exhibit A–1, at p. 31 (Plaintiff's job title—Processing Maintenance Technician 4 —under the "Processing Division").

The Prior CBA and Current CBA both contain broad, mandatory arbitration provisions providing that "[c]laims for alleged violations of employment related statutes, regulations, or other state or federal laws, other than claims arising under the Employer Retirement Income Security Act," including specifically claims under the Fair Labor Standards Act and the Arizona Wage Payment Act, are exclusively subject to resolution by arbitration.

The Current CBA arbitration procedure provides:

**ARTICLE 8**
**GRIEVANCE AND ARBITRATION PROCEDURE**

8.1   A grievance is a complaint alleging a violation of a provision of this Agreement arising from a specific act or situation, **or an alleged violation of an employment related statute, regulation, or other law**.

8.2   Before a grievance is submitted, an employee must first discuss the matter with his immediate supervisor and attempt to resolve it.  If the discussion between the employee and his immediate supervisor fails to resolve the matter, the employee may submit a grievance.

8.3   Step 1.  A grievance must be written, be signed by the employee, state the facts upon which the grievance is based, identify the specific provisions of the Agreement allegedly violated or the employment related statute, regulation, or other law allegedly violated, and state the remedy sought.  The grievance must be submitted to the aggrieved employee's immediate supervisor within seven calendar days of the event giving rise to the grievance.

The employee's department head or his representative will schedule a Step 1 grievance meeting within 10 calendar days of the supervisor's receipt of the grievance.  Although the scheduling will occur during these 10 calendar days, the actual meeting date may be after the 10 calendar days.  The aggrieved employee and a Union representative may attend the Step 1 grievance meeting.  Within 10 calendar days of the Step 1 grievance meeting, the department head or his representative will provide a written decision to the aggrieved

employee. A copy of the written decision will be provided to the Union. If the Step 1 decision does not resolve the grievance, the employee may appeal the grievance to Step 2.

Step 2. The appeal to Step 2 must be written, submitted to the Manager of Human Resources within 10 calendar days of the date the Step 1 decision is provided to the aggrieved employee, and state the reasons the Step 1 decision is claimed to be unsatisfactory. The Manager of Human Resources or his representative will schedule a Step 2 grievance meeting within 10 calendar days of the date the Step 2 appeal is submitted. Although the scheduling will occur during these 10 calendar days, the actual meeting date may be after the 10 calendar days. The aggrieved employee and a Union representative may attend the Step 2 grievance meeting. Within 10 calendar days of the Step 2 grievance meeting, the Manager of Human Resources or his representative will provide a written decision to the aggrieved employee. A copy of the written decision will be provided to the Union. If the Step 2 decision does not resolve the grievance, the Union may appeal the grievance to arbitration.

Step 3. The appeal to arbitration must be written and submitted to the Manager of Human Resources within 10 calendar days of the date the Step 2 decision is provided to the aggrieved employee.

8.4   During the 10 calendar days following the Union's submission of its appeal to arbitration, the parties will select an arbitrator from the following panel of arbitrators:

> Sara Adler
>
> Gary A. Anderson
>
> Gary L. Axon
>
> Charles J. Crider
>
> Elizabeth G. Ford
>
> Lynne M. Gomez
>
> Anthony Miller

If the parties do not otherwise agree upon the selection of an arbitrator from the panel, an arbitrator will be selected by the parties alternately striking arbitrators from the panel until one arbitrator remains and that will be the arbitrator selected for the case.

8.5   An arbitrator shall not add to, subtract from, or modify the terms of this Agreement. The decision of the arbitrator shall be final and binding.

    8.6    The parties will share equally the fees and expenses of the arbitrator, the costs of a transcript of the arbitration hearing, and the location for the arbitration hearing.

    8.7    Multiple grievances will be arbitrated in one arbitration proceeding when the parties agree in writing to do so.

    8.8    All matters involving discipline or discharge shall not be arbitrable matters except as to the facts.

    8.9    Testimony at an arbitration hearing will be under oath and witnesses will be sworn individually at the time they testify.

    8.10    Grievance meetings will be held outside the work hours of the employees involved to the maximum extent possible.

    8.11    The time periods set forth in this Article 8 are material. The parties may extend the time periods in this Article by a written agreement signed before the time periods expire.

    8.12    Nothing in this Agreement shall interfere with the right of an employee under Section 9(a) of the National Labor Relations Act to present a grievance to the Company without the intervention of the Union.

    8.13    Claims of alleged violations of employment related statutes, regulations or other state or federal laws, other than claims arising under the Employee Retirement Income Security Act, are subject to this grievance and arbitration procedure and **this grievance and arbitration procedure is the sole and exclusive procedure** for addressing such alleged violations. This provision includes, but is not limited to, Title VII of the Civil Rights Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, the Worker Adjustment and Retraining Notification Act, **the Fair Labor Standards Act**, the Genetic Information Nondiscrimination Act, the Arizona Civil Rights Act, and the **Arizona Wage Payment Act**. An arbitrator will apply the appropriate law in deciding a grievance involving a claim of an alleged violation of an employment related statute, regulation, or other law. This Article 8.13 does not preclude an employee from filing a claim or complaint with a state or federal agency.

*See* Exhibit A–1 (emphases added), *see also* Exhibit A–2.

Plaintiff, individually and together with every member of the proposed collective and class he purports to represent, are or were at all times relevant to the above-captioned matter, members of a bargaining unit represented by the Union that negotiated the Prior CBA and Current CBA with Pinto Valley, and accordingly, subject to an arbitration

procedure that requires all disputes between Pinto Valley and bargaining unit members be arbitrated, including specifically both FLSA and AWPA claims. Because both the Prior CBA and Current CBA include valid and enforceable arbitration procedures that govern the specific claims at issue in the above-captioned matter, this action must be dismissed with prejudice.

## ARGUMENT AND AUTHORITIES

The Federal Arbitration Act (the "FAA") states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indeed, the Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2001) (Section 2 of the FAA reflects "a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract. In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.") (internal citations and quotation marks omitted)).

In *Epic Systems Corp. v. Lewis,* the Supreme Court determined that pursuing a claim as a class or collective action does not constitute an avoidance of an arbitration

- 7 -

agreement. 138 S. Ct. 1612, 1619, 1622–23, 1627–28, 1632 (2018). More specifically, it concluded that Congress intended the FAA to apply in all cases, including putative class and collective actions, when an employee and employer agreed to resolve such disputes through individual arbitration. *Id.*

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is a procedurally sufficient mechanism to enforce an arbitration provision. *See LeFever v. Fairway Indep. Mortg. Corp.*, No. 18–08326, 2019 WL 13251749, at *3 (D. Ariz. Nov. 1, 2019) (citations and quotations omitted) (dismissing wage and hour case filed under the FLSA where all claims were subject to mandatory arbitration). Under the FAA, Rule 12(b)(1), Rule 12(b)(6), the NLRA and applicable law, the Complaint is all subject to mandatory arbitration, and the Court should dismiss the case in favor of the arbitration procedures in the CBAs.

**A.      Under The FAA, The Arbitration Procedures Are Enforceable.**

"The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*) (internal quotation marks omitted). If the parties entered into a valid agreement that encompasses the dispute, "then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party resisting arbitration has the burden to show the claims are not suitable for arbitration. *Green Tree Fin. Corp. v. Randolph*, 531

U.S. 79, 91–92 (2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds*. The CBAs clearly are valid agreements that encompass the disputes in the Complaint – which are solely FLSA and AWPA claims; and thus the Complaint should be dismissed, due to the binding arbitration procedures in the CBAs.

**B.     The Arbitration Procedures Are Valid, And Embrace Plaintiff And The Other Hourly Employees.**

Plaintiff is subject to the arbitration procedures contained in the Prior CBA and Current CBA, which unambiguously require Plaintiff (and those purportedly similarly situated or that he seeks to represent) to arbitrate all of the claims alleged in the Complaint.

By virtue of being subject to the Prior CBA and Current CBA, Plaintiff and other covered employees agreed to arbitrate "[c]laims for alleged violations of employment related statutes, regulations, or other state or federal laws, other than claims arising under the Employer Retirement Income Security Act," including specifically claims under the FLSA and the AWPA.

The Supreme Court has made clear that arbitration provisions in collective bargaining agreements, like here, are completely enforceable and binding on all bargaining unit members, even as to statutory employment claims, and require dismissal of claims brought in court. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274, 129 S.

- 9 -

Ct. 1456, 1474, 173 L. Ed. 2d 398 (2009) ("a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law"). In *Pyett*, the Supreme Court recognized not only the power and national policy in favor of arbitration embodied in the FAA but also the powerful reach of the National Labor Relations Act, under which unions regularly negotiate arbitration provisions for bargaining unit members:

> Labor unions certainly balance the economic interests of some employees against the needs of the larger work force as they negotiate collective-bargaining agreements and implement them on a daily basis. But this attribute of organized labor does not justify singling out an arbitration provision for disfavored treatment. This "principle of majority rule" to which respondents object is in fact the central premise of the NLRA.

*14 Penn Plaza LLC v. Pyett*, 556 U.S. at 270. Thus, supported by the NLRA, when a union and employer bargain over the terms and conditions of employment for members of the bargaining unit, the result creates a fully enforceable agreement, including arbitration procedure/provisions. *Id*. Courts in the Ninth Circuit have also enforced collective bargaining agreements to mandate arbitration of wage and hour claims, like here. *See*, *e.g.*, *Hollifield v. U.S. Borax, Inc.*, No. 24–00228, 2024 WL 4329075 (C.D. Cal. Aug. 5, 2024) (enforcing CBA mandatory arbitration over claims brought as a putative class action claiming employee wage and hour violations under the California Labor Code and Business & Professions Code); *Greene v. Omni Limousine, Inc.*, No. 18–01760, 2020 WL 10576395 (D. Nev. Mar. 30, 2020) (enforcing CBA mandatory

arbitration against complaint brought under the FLSA and Nevada state wage statute). Where the collective bargaining agreement covers the employee(s) at issue and clearly and unmistakably includes the claims at issue, the arbitration procedures must be enforced by a court. *Pyett*, 556 U.S., at 274. That is exactly the case here.

Both the Prior CBA and Current CBA contain identify "the Union as the exclusive representative for the purpose of collective bargaining" regarding "terms and conditions of employment" for unit employees following certification in NLRB Case No. 28-RD-199646, dated July 6, 2017. *See* Exhibit A–1, A–2, Article I & Exhibit A to the CBAs. Upon securing certification, the unions had the power to enter into collective bargaining agreements, including the Prior CBA, the Contract Extension Agreement, and Current CBA, on behalf of covered employees. *See Pyett*, 556 U.S., at 271 (rejecting an argument that would amount to a "collateral attack on the NLRA"); *Hollifield*, 2024 WL 4329075, at \*\*4–5; *Greene*, 2020 WL 10576395, at \*\*3–4. And that is what the Union did.

Plaintiff (and those purportedly similarly situated or that he seeks to represent) thus agreed to be bound by the valid arbitration procedures within the Prior CBA and Current CBA when the Union ratified those procedures by entering into these CBAs. *See* Exhibit A (S. Harrell Decl.), at ¶¶ 4, 5, 6 ("all hourly Pinto Valley employees, as of the date Valtierra filed the Complaint, were covered by the CBA, and this was the case also for the duration of the two CBAs noted above and the extension period bridging their stated dates."); *compare* Complaint (ECF No. 1), at ¶¶ 23, 24, 25, 26 (seeking opt-in notices or to represent Pinto Valley hourly employees). Accordingly, Plaintiff and other

covered employees entered into valid agreements to arbitrate employment-related disputes, including claims set forth in the Complaint.

In *Greene* (after the Court blessed the formation of a collective), the defendant sought to compel arbitration pursuant to the arbitration provision of a collective bargaining agreement, arguing that the agreement's arbitration provision covered the asserted wage and hour claims and bound plaintiffs as well as everyone in the collective and class whom plaintiffs seek to represent. *Id*. at *1. The District Court concluded that "Defendant's evidence shows by a preponderance of the evidence that Local 713 became the exclusive collective bargaining representative for limousine drivers such as Plaintiffs, and that the 2018 CBA is a validly executed agreement with an arbitration provision applicable to Plaintiffs and members of the Collective." *Id*. at *5. The District Court also found that the arbitration provision covered each of plaintiffs' claims, which included an FLSA claim. *Id*. Accordingly, the court mandated arbitration procedures be followed. *Id*. at *6. As in *Pyett*, *Hollifield* and *Greene*, the Court should hold Plaintiff is indeed bound by the arbitration procedures contained in the CBAs.

Finally, the arbitration procedures are supported by consideration. Under Arizona law (to the extent it may apply), even setting the NLRA aside, Plaintiff's continued employment with Defendant was sufficient consideration for his agreement to arbitrate. *See Coup v. Scottsdale Plaza Resort, LLC*, 823 F.Supp.2d 931, 943–44 (D. Ariz. 2011) (continued employment is sufficient consideration to support an employment arbitration agreement); *see also Carroll v. Lee*, 14 Ariz. 10, 13, 712 P.2d 923, 926 (Ariz. 1986);

*Mattison v. Johnston*, 152 Ariz. 109, 113, 730 P.2d 286, 290 (Ariz. Ct. App. 1986). Furthermore, the arbitration policy mutually binds both Plaintiff and Defendant to arbitrate covered claims, and therefore Plaintiff is also receiving consideration in the form of Defendant giving up its right to pursue litigation. *See Carroll*, 712 P.2d at 926 ("monetary consideration is not always required . . . [a]dequate consideration consists of a benefit to the promisor and a detriment to the promisee.") (citations omitted). Moreover, as is evident from the CBAs, both Pinto Valley and the Union bargained positions over pay, terms and conditions of employment for covered employees (and thus the parties had between them consideration) when they bargained over the terms of the CBA, as provided by the NRLA and controlling labor law. The CBAs are clearly supported by consideration and are otherwise enforceable arbitration agreements under controlling law.

Because the parties agreed to valid arbitration procedures supported by consideration, the arbitration procedures within the Prior CBA and Current CBA are enforceable. No more is required under the FAA, Supreme Court precedent and Arizona law (to the extent it applies), particularly in light of the presumption in favor of arbitration.

**C.     The Arbitration Procedures Cover Plaintiff's Claims**.

The CBAs' arbitration procedures cover all of Plaintiff's claims against Defendant, as well as claims on behalf of those he claims are similarly situated or seeks to represent. The language of the relevant arbitration procedures makes arbitration the

- 13 -

exclusive forum for the resolution of all employment-related disputes between employees covered by the Prior CBA and Current CBA and Defendant, except for claims arising under ERISA.

Plaintiff's Complaint alleges that Defendant violated the FLSA and the AWPA regarding compensation while employed by Defendant, and those with whom he claims are similarly situated or seeks to represent have analogous claims against Defendant. The claims are unequivocally disputes involving "[c]laims of alleged violations of employment related statutes, regulations or other state or federal laws," and specifically claims under the FLSA and the AWPA, and, as a result, the claims are clearly covered by the arbitration procedures contained in the Prior CBA and Current CBA. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009). The arbitration procedures in the Prior CBA and Current CBA are the sole mechanism available for Plaintiff's Complaint.

Now as to the disposition of the Complaint. While the FAA permits the concept of a stay when less than all claims are at issue, dismissal has been held the proper procedural remedy (rather than a stay) when all the claims are embraced by the arbitration agreement(s), as here, and thus must be submitted to arbitration. *See*, *e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276 (9th Cir. 2006) (recognizing power of a federal court to stay or dismiss depending on any remaining claims); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060–61 (9th Cir. 2004) (affirming dismissal with prejudice of claims that were subject to arbitration pursuant to Fed. R. Civ. P. 12(b)(6), recognizing a "stay," as referenced in the FAA, is not mandatory); *LeFever v.*

*Fairway Indep. Mortg. Corp.*, No. 18–08326, 2019 WL 13251749, at *3 (D. Ariz. Nov. 1, 2019). *But see Smith v. Spizzirri*, 601 U.S. 472, 144 S. Ct. 1173, 218 L. Ed. 2d 494 (2024) ("when a federal court finds that a dispute is subject to arbitration and a party has requested a stay of the court proceeding pending arbitration, the FAA compels the court to stay the proceeding").[2]

The Complaint should be dismissed with prejudice.

## CONCLUSION

The Motion should be granted.

Respectfully submitted, this 20th day of February, 2025.

    CLARK HILL PLC

    s/Paul A. Wilhelm
    Paul A. Wilhelm (*pro hac vice*)
    (MI: P69163)
    Andrew J. Ruxton (*pro hac vice*)
    (PA: 322818)
    CLARK HILL PLC
    200 Ottawa Avenue NW, Suite 500
    Grand Rapids, MI 49503
    Office: 313.309.4269
    Fax: 313.309.6847
    Email: pwilhelm@clarkhill.com
          aruxton@clarkhill.com
    *Attorneys for Defendant, Pinto Valley Mining Corp.*

---

[2] To the extent the proper reading or holding of *Smith v. Spizzirri* and the FAA is that proper procedure here must be a request under the FAA for entry of a stay pending arbitration, Pinto Valley hereby makes such a request, based on the authorities and arguments cited in this Motion.

## **CERTIFICATION PURSUANT TO LRCIV 12.1(c)**

Pursuant to LRCiv 12.1(c), counsel for Defendant, Pinto Valley Mining Corp., hereby certifies that before filing this Motion, the undersigned notified counsel for Plaintiff of the issues asserted in the Motion, and counsel for the parties discussed the issues raised in the motion, including the effect of a CBA as the source/agreement at issue, and controlling authority, and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by Plaintiff.

                    s/Paul A. Wilhelm
                    Paul A. Wilhelm (*pro hac vice*)
                    (MI: P69163)
                    CLARK HILL PLC
                    200 Ottawa Avenue NW, Suite 500
                    Grand Rapids, MI  49503
                    Office: 313.309.4269
                    Fax: 313.309.6847
                    Email: pwilhelm@clarkhill.com

*Attorneys for Defendant, Pinto Valley Mining Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025 I electronically filed the foregoing document with the Clerk of the Court by using the electronic filing system, which will electronically serve all participants in the case.

s/Paul A. Wilhelm
Paul A. Wilhelm (*pro hac vice*)
(MI: P69163)
Clark Hill PLC
